**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|   Plaintiff/Respondent, | § | |
| | § | |
| v. | § | **CRIMINAL NO. 2:17-62** |
| | § | **CIVIL NO. 2:19-61** |
| MIGUEL ANTONIO RAMOS, | § | |
|   Defendant/Movant. | § | |

## MEMORANDUM OPINION & ORDER

Defendant/Movant Miguel Antonio Ramos filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (D.E. 42). Pending before the Court is the United States of America's (the "Government") Motion to Deny Relief on the Record (D.E. 47), to which Movant has responded (D.E. 52). For the reasons stated herein, the Government's motion is **GRANTED**, and Movant's § 2255 motion is **DENIED**.

## I. BACKGROUND

On June 26, 2009, this Court sentenced Movant to 100 months' imprisonment and 5 years' supervised release following his conviction in Case No. 2:08-CR-761-7 for conspiracy to possess with intent to distribute more than 5 kilograms of cocaine. On January 22, 2015, the Court reduced his sentence to 80 months under Amendment 782 to the Sentencing Guidelines. Movant was released later that year and began serving his term of supervised release on October 30, 2015.

On November 4, 2016, the United States Probation Office (USPO) issued a Petition for Warrant or Summons for Offender under Supervision in Case No. 2:08-CR-761-7 alleging the following supervised release violations: assault causing bodily injury

to a family member, criminal mischief, violation of a protective order, and tampering with a witness.

The events giving rise to the supervised release violations and Movant's eventual conviction for witness tampering in the above-captioned case began on September 4, 2016. At around 2:49 A.M., Movant was intoxicated and assaulted his girlfriend, Valerie Morales, at the home they shared. Morales received treatment at a hospital in Corpus Christi and gave a statement to a Corpus Christi Police Department (CCPD) officer naming Movant as her assailant. However, when Bryce Stark—the USPO officer assigned to Movant's supervision on the cocaine trafficking conviction—interviewed Morales over the telephone on September 12, 2016, she stated that an ex-boyfriend, not Movant, had assaulted her.

Movant assaulted Morales again on November 13, 2016, when she was a passenger in his car. Morales eventually convinced Movant to stop at a convenience store, and she got out of the car and refused to get back in. A CCPD officer responded to an emergency call at the convenience store and interviewed Morales. She told the officer that Movant had assaulted her several times in the past, but the only one she reported was the September assault because she thought he had broken her jaw. After Movant drove past the convenience store, another officer followed and arrested him.

During a December 6, 2016 interview with USPO officers, Morales revealed that Movant was present during her earlier telephone call with Officer Stark on September 12, 2016. Morales stated that Movant had threatened her not to cooperate with Officer Stark and told her during subsequent telephone calls from jail not to cooperate or provide any

information to the USPO. Recordings of jail telephone conversations confirmed that in at least 22 calls between November 13, 2016 and December 7, 2016, Movant told Morales not to cooperate with or answer any questions from Officer Stark.

On January 25, 2017, Movant was charged in a one-count indictment with knowingly attempting to intimidate, threaten, and corruptly persuade V.M. (Morales), a witness, by instructing her to withhold testimony and provide limited information to a United States District Court, with the intent to hinder, delay, and prevent the communication to a United States judge of information relating to the commission of a violation of conditions of supervised release, to wit: law violation of assault causing bodily injury to a family member, an allegation in a pending petition related to a supervised release violation revocation hearing in Case No. 2:08-CR-761-7, in violation of 18 U.S.C. § 1512(b)(3). On March 2, 2017, Movant pled guilty to tampering with a witness before a magistrate judge. This Court accepted the Findings and Recommendation on Plea of Guilty.

The Presentence Investigation Report (PSR, D.E. 22) calculated Movant's base offense level at 14. Eight levels were added under U.S.S.G. § 2J1.2(b)(1)(B) because the offense involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice; three levels were added under U.S.S.G. § 2J1.2(b)(2) because the offense resulted in substantial interference with the administration of justice; and two levels were added under U.S.S.G. § 3A1.1(b)(1) because Movant knew or should have known the victim of the offense was a vulnerable victim. After a two-level reduction for acceptance of responsibility, the PSR calculated a

total offense level of 25 and a criminal history category of V. Defense counsel filed written objections to all three sentencing enhancements.

The Court conducted a joint sentencing hearing on the instant witness tampering case and on the revocation of supervised release in Case No. 2:08-CR-761-7. 6/8/2017 Sent. Tr., D.E. 32. At the hearing, defense counsel renewed his written objections to the PSR, and the Court heard testimony from Officer Stark in order to resolve those objections. On September 12, 2016, Officer Stark received a phone message from Morales' mother stating that Movant had assaulted Morales and that Morales went to the hospital and reported the assault to the CCPD. Officer Stark immediately called Morales, but she stated that her ex-boyfriend, not Movant, had assaulted her. Morales agreed to meet with Officer Stark on September 14, 2016; however, she never showed up.

After the USPO filed a petition to revoke supervised release on November 4, 2016, Officer Stark learned that Movant assaulted Morales again on November 13, 2016. In a December 6, 2016 statement, Morales acknowledged that Movant had also assaulted her on September 4, 2016, but while she was on the telephone with Officer Stark, Movant had instructed her not to cooperate. She also revealed that she had spoken with Movant while he was in jail and that he told her not to communicate, cooperate, or participate in any way with Officer Stark regarding the investigation of his violation of supervised release, and to stop her mother from speaking to Officer Stark. Movant also gave Morales explicit instructions on how to get his state charges dismissed and asked about her progress in doing so.

Officer Stark obtained 890 recorded telephone calls made by Movant from both the Nueces County Jail and the Coastal Bend Detention Center, and he spent approximately 90 hours listening to the calls.[1] Afterwards, he gave the call logs to the Government, and the FBI conducted its own investigation. The USPO filed a superseding petition to revoke supervised release on January 11, 2017, which accounted for Morales' admission that Movant had in fact assaulted her in September 2016. This final petition to revoke was delayed for months because Officer Stark was unable to communicate with Morales regarding the information related to the September assault.

---

[1]. The following examples of Movant's threats to Morales made during the recorded jail conversations appear in the PSR:

> 9. On November 19, 2016, Movant called V.M. (Morales). During the call, Movant speaks to V.M. in a harassing and threatening manner by questioning whether V.M. had been with her "ex." Movant tells V.M. that he better not find out V.M. is doing something stupid. Movant tells V.M. she better not hang up; tells her to answer when he calls, even if she is at work; and states, "Just because I am in here, I can still reach out and touch you."

> 10. During a call on November 21, 2016, Movant and V.M. argue about Movant' belongings and their children, Movant states "Who the f--k do you think you are? You think 'cause I'm in here I?" "Don't forget, I can talk to people in here too." And "I know you're up to no good."

> 11. On November 25, 2016, Movant called V.M. and in a harassing and threatening manner accused her of being out drinking alcohol the night before and accused her of seeing other people. Movant states to V.M., "Don't f--k with me, you're going to make me f--k up." Movant also states, "You are lucky I am in here, I would f--k your ass up. I don't give a f--k anymore."

> 12. During two telephone calls from Movant on December 6, 2016, V.M. advised Movant that V.M. spoke to the U.S. Probation Officer after the preliminary hearing. Movant stated: "I don't know what you went to talk to him for. I told you not to talk to him . . . What the f--k did you tell him? . . . you shouldn' have answered him, f--king stupid shit. You don't have to talk to him . . . And then so what's going to happen Val? Why did you go over there? F--k! I f--king told you not to be talking to these people man . . . You should not have answered any questions at all." Later that same day, Movant and V.M. discuss the allegation that someone said that Movant had used a gun previously. Movant stated to V.M.: "You need to figure out how to shut the f--k up already."

PSR ¶¶ 9–12.

Officer Stark testified that he believed Morales legitimately feared Movant based upon his meetings with her, the recorded jail conversations, and a specific discussion with her on December 6, 2016, when she told him that she feared for her life. Morales also told Officer Stark she feared for her children's lives because she believed Movant had access to a gun. On cross-examination, Officer Stark disagreed with defense counsel that the majority of the recorded jail conversations related to Movant's fears of Morales' alleged infidelity.

After argument by counsel, the Court took a brief recess and reviewed the recorded jail conversations. The Court overruled Movant's objections related to threatening to cause physical injury and substantial interference with justice, but found that the two-level enhancement for vulnerable victim should not apply. The Court further found that Movant was entitled to a third point off for acceptance of responsibility. With a total offense level of 22 and criminal history category of V, Movant's recommended Guideline sentencing range was 77–96 months. The Court sentenced Movant to 84 months' imprisonment, to be followed by three years' supervised release.[2] Judgment was entered June 9, 2017.

On appeal, Movant challenged the Court's application of the sentencing enhancements for threatening to cause physical injury and substantial interference with justice. *United States v. Ramos*, U.S.C.A. No. 17-40623, 731 F. App'x 329, 330 (5th Cir.), cert. denied, 139 S. Ct. 277 (2018). The Fifth Circuit determined that the factual

---

2. In the hearing on the petition for revocation, the Court found Movant guilty of four violations, and he admitted to committing seven other violations. He was sentenced to an additional 37 months' imprisonment in Case No. 2:08-CR-761-7, with 25 months to run concurrent with and 12 months to run consecutive to the instant case.

findings underlying the application of both enhancements were plausible in light of the record as a whole, and the district court did not clearly err in applying the enhancements. *Id.* at 331. The court affirmed Movant's conviction on May 16, 2018, and it became final on October 1, 2018, when the Supreme Court denied his petition for a writ of certiorari.

Movant filed the current § 2255 motion on February 13, 2019. It is timely.

## II. MOVANT'S ALLEGATIONS

Movant raises the following grounds for relief:[3]

A. Trial counsel was ineffective for failing to properly present arguments and evidence to the Court in support of his objections to the Presentence Investigation Report;

B. Appellate counsel was ineffective for failing to properly develop and present arguments on appeal; and

C. The Court erred in applying the sentencing enhancements for threatening to cause physical injury to a person and substantial interference with justice.

## III. LEGAL STANDARDS

### A. 18 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not

---

3. Movant also alleged that trial counsel was ineffective for advising him to plead guilty without investigating the underlying facts; however, he withdrew this claim in response to the Government's motion.

have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

## B. Ineffective Assistance of Counsel

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial. *Id.* This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689–90. With regard to the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address

both components of the inquiry if the defendant makes an insufficient showing on one");

*Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir.1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

Persons convicted of a crime also are entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985). An appellate counsel's performance is reviewed under the *Strickland* standards. *See Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998). Effective assistance of appellate counsel does not mean that counsel will raise every available non-frivolous ground for appeal. *Evitts*, 469 U.S. at 394; *West v. Johnson*, 92 F.3d 1385, 1396 (5th Cir. 1996). Nor will counsel be deficient for failing to press a frivolous point. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *Evitts*, 469 U.S. at 394.

## IV. ANALYSIS

### A. Ineffective Assistance of Trial Counsel

Movant argues that trial counsel was ineffective at sentencing because he failed to present arguments and evidence in support of his objections to the enhancements for threatening to cause physical injury and substantial interference with justice. To show prejudice in the sentencing context, a movant must show that counsel's deficient performance resulted in any amount of prison time above that the movant would have received if the forfeited complaint had been advanced at trial or on appeal. *United States v. Grammas*, 376 F.3d 433, 438–39 (5th Cir. 2004).

### 1. Failure to Call Alleged Victim as a Witness at Sentencing

Movant alleges that trial counsel was ineffective at sentencing because he failed to call Valerie Morales to refute the eight-level enhancement for threatening to cause physical injury based on the recorded jail conversations between Movant and Morales. According to Movant, it was erroneous for Officer Stark "to ascribe his own personal interpretation to the 'words' spoken" by Movant to Morales in these conversations, and trial counsel should have called Morales as a witness at sentencing to explain. D.E. 42, p. 10. Had counsel contacted Morales, she swears that she "would have voluntarily appeared in court and told the Court how I felt and that the Probation Officer was misrepresenting the facts, and misinterpreting the telephone calls." Morales Aff., D.E. 42-1, ¶ 6. Morales would have testified that "the Probation Officer improperly interpreted telephone jail calls that [Movant] made from the county jail to myself as being threatening." ¶ 2. Morales would have also told the Court that Officer Stark used isolated comments from these conversations out of context in order to make it appear that Movant had threatened to harm her or was attempting to have her say things that were not true. *Id.*, ¶ 4. Finally, Morales states that, after Officer Stark left numerous messages for her, she asked Movant whether she should meet with Officer Stark, and "[h]e told me to do whatever I believed best." *Id.*, ¶ 5.

The Court personally reviewed the recorded jail conversations and transcripts, and it was the Court's interpretation of the calls, not that of Officer Stark, that controlled its application of the enhancement for threatening to cause physical injury to a person. Trial counsel also had access to the telephone conversations and could reasonably have

concluded that a number of them would support a finding that Movant threatened to cause physical injury to Morales, despite Morales' current assertions to the contrary.

Moreover, had trial counsel offered the testimony set out in Morales' affidavit, he would have been at risk of suborning perjury. Officer Stark's testimony that Morales told him Movant instructed her not to cooperate with his investigation into Movant's alleged supervised release violations was corroborated by the recorded jail conversations. Morales' statement that an ex-boyfriend assaulted her in September 2016, and her subsequent recantation of that statement in the wake of the November assault, further damaged her credibility. Counsel's failure to secure the testimony of an unreliable witness was not unreasonable. This claim is denied.

## 2. Failure to Argue that Officer Stark Exceeded Authority

Movant next complains that trial counsel failed to argue that the three-level enhancement for substantial interference with justice was unsupported by the record because Officer Stark should not have reviewed the recorded jail conversations to begin with. According to Movant, "It is not the duty or responsibility of a federal probation officer to investigate possible criminal activity. Thus Probation Officer Stark exceeded his statutory authority by actively investigating [Movant] for the purposes of charging him with criminal conduct." D.E. 42, p. 9 (citing *United States v. Waters*, 158 F.3d 933, 945 (6th Cir. 1998)).[4]

---

4. Waters argued that his revocation proceedings were "'null and void' because his probation officer exceeded his explicitly statutory authority by actually requesting the revocation of his supervised release rather than simply reporting a suspected violation." *Waters*, 158 F.3d at 945 (citing *United States v. Jones*, 957 F. Supp. 1088, 1090 (E.D. Ark. 1997)). The court did not rule in favor of Waters; instead, it noted that "[s]everal court have expressly rejected" the reasoning of "the single district court decision" Waters cited and further held that he waived this claim when he failed to raise it before the district court.

In support of an adjustment for substantial interference, the PSR provided:

> The defendant's interference in the investigation of the initial assault in September 2016, and the second assault on November 13, 2016, caused a two-month delay into the investigation of each of those violations of supervised release conditions. Further, in investigating both assaults, the probation officer spent not less than 90 hours reviewing telephone calls, interviewing the victim, and other investigative activities, resulting in the unnecessary expenditure of substantial governmental and court resources.

PSR ¶ 21. Officer Stark testified consistently with the PSR and further stated that, after he had finished his investigation into Movant's alleged supervised release violations, he turned over the recordings to the Government, and the FBI became involved. Sent. Tr. at 29:3-18.

Movant appears to confuse the USPO's investigation into the alleged supervised release violations with the FBI's subsequent investigation to determine whether he had engaged in witness tampering. There is nothing to support Movant's claim that Officer Stark reviewed the recorded jail conversations for the purposes of charging Movant with a crime. Trial counsel was not ineffective for failing to make this argument. This claim is denied.

### 3. Failure to Argue Corrupt Persuasion

Finally, Movant claims that trial counsel was ineffective for failing to argue that Movant "pled guilty to only corruptly persuading" Morales to refuse to testify against him, and not to "tampering with a witness" or "obstructing justice by threatening Valerie Morales with physical injuries." D.E. 52, p. 3. According to Movant, "the enhancements

to [a] petitioner's base offense level are not applicable when the offense is premised on the 'corruptly persuades' means of violating 18 U.S.C. § 1512." *Id.*

There is nothing in the record to support Movant's claim that he merely pled guilty to "corrupt persuasion" and nothing more. Movant did submit a statement of responsibility to the USPO in support of an adjustment for acceptance of responsibility, wherein he admitted "that he did knowingly attempt to corruptly persuade V.M." PSR ¶ 17. However, he pled guilty to knowingly attempting to "intimidate, threaten *and* corruptly persuade V.M.," as alleged in the Indictment. D.E. 1 (emphasis added). Moreover, "the guidelines allow consideration of relevant conduct of which the defendant has not been convicted," including conduct the defendant denies committing. *United States v. Byrd*, 898 F.2d 450, 452 (5th Cir. 1990). Trial counsel was not ineffective for failing to raise this argument at sentencing. This claim is denied.

### B. Ineffective Assistance of Appellate Counsel

Movant further complains that appellate counsel was ineffective for failing to properly challenge the sentencing enhancements on appeal. Movant claims that "perfunctory arguments were made, but were without substance or force." D.E. 42, p. 13. Specifically, appellate counsel failed to argue that Officer Stark lacked the authority to conduct a criminal investigation and pursue charges against Movant.

As set forth *supra*, the FBI investigated Movant for the crime of witness tampering after Officer Stark turned over the recorded jail conversations following his investigation into Movant's alleged supervised release violations. There is nothing to support Movant's

claim that Officer Stark reviewed the calls as part of a criminal investigation. Appellate counsel was not ineffective for failing to make this argument. This claim is denied.

### C. The Court Erred in Applying Sentencing Enhancements

Finally, Movant claims that the Court erred in enhancing his base offense level under the Sentencing Guidelines because: (1) the enhancement for threatening to cause physical injury to a person constituted "double counting," as Movant's alleged conduct framed part of the offense of conviction, and (2) the enhancement for substantial interference with justice was not supported by the evidence because Officer Stark's review of the recorded jail conversations was "totally gratuitous and duplicated the FBI's investigation." D.E. 52, p. 13.

The Fifth Circuit previously determined that the Court did not err in applying either enhancement. *Ramos*, 731 F. App'x at 331. Moreover, "[a] district court's technical application of the Guidelines does not give rise to a constitutional issue cognizable under § 2255." *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994) (citing *United States v. Vaughn*, 955 F.2d 367 (5th Cir. 1992)). This claim is denied.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Movant has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULE 11, § 2255 RULES.

A certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84).

Based on the above standards, the Court concludes that Movant is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, the Government's Motion to Deny Relief on the Record (D.E. 47) is **GRANTED**, and Movant's § 2255 motion (D.E. 42) is **DENIED**. Movant is further **DENIED** a Certificate of Appealability.

ORDERED _____9/3/19_____.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE